406 So.2d 163 (1981)
STATE of Louisiana
v.
James Eldon BOATRIGHT.
No. 81-KA-0920.
Supreme Court of Louisiana.
November 16, 1981.
*164 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Abbott J. Reeves, William W. Hall, Asst. Dist. Attys., for plaintiff-appellee.
Robert T. Garrity, Jr., New Orleans, and Joseph L. Montgomery of Indigent Defender Bd., Metairie, Ulysses D. Smith, for defendant-appellant.
LEMMON, Justice.[*]
This is an out of time appeal from a conviction of manslaughter, based on a guilty plea, and a sentence of 15 years imprisonment. On appeal defendant questions the trial court's denial of his motion to withdraw the guilty plea and the trial court's compliance with the sentencing guidelines of C.Cr.P. Art. 894.1.
Facts
The fatal shooting underlying the conviction occurred at 2:00 a. m. in the manager's office of a motel where defendant was living. The facts leading up to the shooting are by no means clearly established.[1]
Several weeks before the incident the victim and a woman named Doris Blackwell separated after having lived together for several years. Doris Blackwell and her daughter apparently began residing at the motel, and defendant began seeing Doris Blackwell on a regular basis. According to defendant's version of the facts, the victim on several occasions threatened to kill defendant, Doris Blackwell and Doris' daughter. Defendant also claimed that the victim had beaten Doris on previous occasions and had once shot at her and her daughter.
At about 3:00 on the afternoon of the incident defendant and the victim were drinking in the bar of the motel. After an argument concerning defendant's relationship with Doris Blackwell, the victim threatened to kill defendant, and defendant left the bar. However, defendant thereafter returned, and the two men continued drinking in the bar throughout the evening despite several other confrontations. Around 8:00 p. m. defendant went to his room to obtain a pistol after the victim threatened him with a knife. When defendant returned to the bar, the victim again had his knife and again made threatening statements. The two nevertheless remained in the bar until about 2:00 a. m., when defendant went to the motel manager's office. The shooting ensued soon thereafter.
*165 Defendant was indicted for first degree murder, and counsel was appointed to represent him. After discussions with the state an agreement was reached whereby defendant was permitted to enter a guilty plea to manslaughter.
At the guilty plea the trial judge thoroughly discussed with defendant on the record the elements of the offense and the rights being relinquished by the plea. The judge also cautioned defendant regarding the maximum penalty and made it very clear that there was no prior agreement regarding the sentence to be imposed. Thus, the record clearly establishes that defendant entered his plea fully aware that the trial court could impose the full range of sentences provided by law. See R.S. 14:31. After the plea the court ordered a presentence investigation and afforded defendant a full opportunity to submit favorable information.
When defense counsel discovered just before sentencing that the trial court intended to impose a 15-year sentence, he orally moved that defendant be permitted to withdraw his guilty plea. The trial court denied the motion and imposed a sentence of 15 years imprisonment at hard labor.
Motion to Withdraw Guilty Plea
Counsel for defendant, an attorney with 15 years of experience, advised defendant to plead guilty to manslaughter based on his assessment of the strength of the state's case. His competency has not been challenged, and there has been no showing that his representation fell below the range of competency demanded of attorneys in criminal cases. See State v. Beatty, 391 So.2d 828 (La.1980); State v. Myles, 389 So.2d 12 (La.1980); United States v. Moore, 432 F.2d 730 (3rd Cir. 1970). Counsel undoubtedly decided, after assessing the evidence, that the circumstances did not warrant going to trial on the first degree murder indictment, thereby risking exposure to a mandatory life sentence.[2] In choosing between the two unpleasant options (going to trial on the first degree murder indictment or pleading guilty to manslaughter), defendant acknowledged his criminal responsibility for unjustifiably taking the life of a fellow human being. Rather than requiring the state to prove that the killing was not committed in self defense,[3] defendant chose to minimize his penalty exposure by entering a guilty plea. The evidence which defendant would have presented in support of his plea of self defense then became proof merely of extenuating circumstances properly urged in mitigation of penalty.[4]
Since there was no specific agreement as to the length of the sentence with either the trial judge or the district attorney who negotiated the plea, and since the trial judge at the time of the guilty plea notified defendant of the possible range of sentences and stated very clearly that he was not promising any particular sentence, defendant was fully aware that the sentence would depend upon the trial judge's assessment of the defendant's character and the nature of the offense, and that such assessment would be based primarily upon the presentence investigation report. Upon learning on the morning of sentencing of the penalty the trial judge intended to impose, defense counsel orally moved to withdraw the guilty plea, stating that he was "completely set aback" by the severity of the penalty and "this is why I am making this oral motion".
Dissatisfaction with the sentence is not a basis for withdrawal of a guilty plea. State v. Robinson, 311 So.2d 893 (La. *166 1975). If defendant's complaint is that his trial counsel did not give him competent advice, then defendant may file an application for post-conviction relief. See C.Cr.P. Art. 924 et seq. However, there is no basis in this record on direct appeal to conclude that the trial judge abused his discretion in refusing to allow the guilty plea to be withdrawn. See C.Cr.P. Art. 559.
Compliance with Sentencing Guidelines
Defendant's primary complaint is that the trial judge imposed an apparently severe sentence without stating for the record the factual basis for the considerations taken into account in sentencing, as required by C.Cr.P. Art. 894.1C.
In imposing sentence, the trial judge considered, but rejected, defendant's contention that he should not be punished severely because there were substantial grounds to believe that his actions were provoked and induced by the victim's misconduct. The trial judge referred primarily to defendant's refusal to avail himself of several opportunities to avoid the killing.[5] The record fully supports this very important consideration.[6] Although there had been prior threats by the victim and a previous brandishing of the knife, at the time of the shooting the knife was in the victim's pocket, and there is no indication (except for defendant's statement to the probation officer) that the victim was in the process of attacking defendant immediately prior to the shooting.[7] Furthermore, despite numerous opportunities to avoid confrontation by staying away from the barroom, defendant continued to return and to argue with the victim. When asked by the probation officer why he did not simply leave the bar and stay away, he stated that Doris Blackwell did not want to leave and also admitted that he was not the type of person to back down or avoid a confrontation.
Defendant's prior record, although not referred to by the trial judge, also supports the sentence imposed. Defendant was previously convicted in Georgia in 1978 of involuntary manslaughter resulting from an automobile accident involving two deaths. He was placed on 12 months probation, which was subsequently revoked. He was also convicted in 1974 of first degree forgery in Georgia and sentenced to serve five years. Although he was paroled after 20 months, the parole was later revoked because of defendant's driving while intoxicated. Defendant's history of prior criminal activity, as well as his record of probation and parole violations, clearly reflect an unwillingness to observe the reasonable rules of a civilized society.
Accordingly, while the trial judge did not completely comply with C.Cr.P. Art. 894.1, the record fully supports the sentence that was imposed, and remand for compliance is unnecessary. State v. Day, 391 So.2d 1147 (La.1980). Furthermore, since the presentence investigation report and the statements submitted by defense counsel contained entirely favorable information (except for some admissions by defendant and his criminal record), defendant cannot complain that the trial judge considered inappropriate factors or failed to *167 allow the defense to submit favorable evidence during the sentencing procedure.[8]
The conviction and sentence are affirmed.
CHAISSON, J. ad hoc, concurs in result.
NOTES
[*] Judges Wallace A. Edwards, Remy Chiasson and Elmo E. Lear of the First Circuit Court of Appeal participated in this decision as Associate Justices ad hoc joined by Chief Justice Dixon and Associate Justices Marcus, Blanche and Lemmon.
[1] The facts related in this opinion were obtained primarily from the presentence investigation report and consist in large measure of defendant's own version of the occurrence.
[2] There were no aggravating circumstances present in this case. C.Cr.P. Art. 905.4.
[3] See State v. Patterson, 295 So.2d 792 (1974), which requires the state to bear the burden of proving that a homicide was not committed in self defense, if the defense has been raised.
[4] C.Cr.P. Art. 894.1B(3), (4) and (5), require the trial court to consider in determining sentence whether defendant "acted under strong provocation", whether there were "substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense", and whether the victim "induced" defendant to commit the offense.
[5] In Louisiana, there is no "retreat" rule as such. However, defendant's reasonable perception of the killing as the only reasonable means of extricating himself from the danger is critical. R.S. 14:20. Nevertheless, by his plea of guilty defendant in effect admitted that the killing was not justified.
[6] The trial court had available the transcript of the preliminary examination, in addition to the presentence report and the information submitted by defense counsel.
[7] According to the investigating officer's testimony at the preliminary examination, there were four persons in the office at the time of the shooting. Doris Blackwell did not see the actual shooting, although she heard the shot. Sheila Blackwell, however, did see the shooting, and she told the investigating officer that defendant and the victim were talking, when defendant picked up a gun from the desk and shot the victim in the neck. Neither Doris nor Sheila mentioned to the investigating officer "any act of violence or any act of aggression on the part of the victim" in the motel manager's office prior to the shooting.
[8] Defense counsel submitted statements by at least three persons attesting to defendant's good character and the victim's reputation as an alcoholic and as a violent and dangerous person. The trial judge referred to the statements during sentencing.