582 So.2d 364 (1991)
STATE of Louisiana, Appellee,
v.
McDOWELL, Appellant.
No. 22517-KA.
Court of Appeal of Louisiana, Second Circuit.
June 19, 1991.
Rehearing Denied July 24, 1991.
Indigent Defender Office by Audie L. Jones, for appellant.
William J. Guste, Jr., Atty. Gen., Paul J. Carmouche, Dist. Atty., Tommy J. Johnson, Kenneth B. Pennywell, Asst. Dist. Attys., for appellee.
Before LINDSAY, HIGHTOWER and BROWN, JJ.
BROWN, Judge.
Henry McDowell was charged, tried by jury and convicted of attempted second degree murder. (LSA-R.S. 14:30.1, 14:27). From a sentence of thirty years at hard labor with credit for time served, he appeals. Finding no merit to his claims, we affirm his conviction and sentence.

FACTS
The facts of this case are simple. On the afternoon of December 4, 1989, a Caddo Parish School bus picked up students at *365 Byrd High School in Shreveport and proceeded on its usual route to pick up students at Caddo Magnet High School. Reginald Rose, a 17 year old senior at Byrd High, was a passenger on the bus. When the bus arrived at Caddo Magnet, defendant, Henry McDowell, tapped on the window where Rose was sitting and challenged him to fight. When Rose did not exit the bus, defendant boarded with a loaded .38 Smith and Wesson revolver. After telling Rose he was going to die, defendant shot Rose in the abdomen and struck him on the head with the gun. Rose managed to escape by the front exit and defendant left by the rear emergency door. Several other students were on the bus when this incident started as well as the bus driver.
Defendant was 20 years old and at trial claimed that when the bus passed him the victim spat on him from the window. Defendant testified that he was just "hanging out" in the neighborhood with a couple of friends. The victim denied the spitting claim and significantly, defendant's "couple of friends" never materialized. Defendant's testimony that the gun accidentally discharged was discredited by expert testimony, the victim and the circumstances.

DISCUSSION
Defendant urges that the prosecutor used a peremptory challenge to strike a juror based solely on race.[1]
LSA-C.Cr.P. Art. 795(B) codifies the holding in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), prohibiting use of a peremptory challenge based solely on the race of a juror. When a defendant objects to a prosecutor's strike, the trial court must determine if a prima facie case exists of purposeful discrimination by use of a peremptory challenge. State v. Collier, 553 So.2d 815 (La. 1989). The burden then shifts to the state to make some racially neutral explanation for excluding the venireman from the jury. Collier, supra.
Defendant was black as was the victim. Defendant's counsel made a timely objection during voir dire to the state's peremptory challenge of a black venireman, J.W. Williams, Jr. Without ruling on whether or not the defense made a prima facie showing, the trial judge allowed the district attorney to give an explanation for the use of his peremptory challenge. The prosecutor noted for the record that the defense had already peremptorily challenged three black veniremen to which defense counsel responded that Batson was not applicable to a defendant. The prosecutor explained that Mr. Williams did not own a gun, and might closely identify with the defendant because of his involvement in a church outreach program with the primary objective to help young people who had "gone astray" to get "on the right track". The prosecutor stated that he felt that Mr. Williams would tend to excuse defendant's behavior and give him a "second chance". The court accepted the explanation as racially neutral and denied defendant's motion.
Prior to Mr. Williams, the prosecutor had apparently accepted four black potential jurors of which three were excused by the defense. Under these circumstances a prima facie case was not shown of purposeful discrimination; however, like the trial judge, we find that the prosecutor provided a racially neutral explanation for his exercise of the peremptory challenge. Considering the answers of Mr. Williams and the reasons given by the prosecutor, the use of the peremptory challenge in this case was racially neutral. Unfortunately, the record does not show how many black jurors actually tried this case, but the defense attorney did argue that a prima facie case was shown even though one black juror had been accepted at that point. This assignment of error is without merit.
Defendant's second assignment of error is that the trial court imposed an excessive sentence. LSA-Const. Art. 1 *366 § 20 prohibits the imposition of excessive punishment. Although a sentence is within the statutory limits it may still violate the defendant's constitutional right against excessive punishment. State v. Hogan, 480 So.2d 288 (La.1985). Article 894.1 of the Code of Criminal Procedure provides a framework for evaluating whether a sentence is excessive. The criteria set forth under Article 894.1 must be considered by the sentencing court. A court is required to specify the circumstances considered in imposing a sentence for the purpose of insuring that the sentence is tailored to the offender and the particular offense. State v. Smith, 433 So.2d 688 (La.1983) and State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir. 1988), writ denied, 521 So.2d 1143 (La. 1988).
The trial judge noted that he had received and reviewed the presentence investigative report (PSI) and had made the report available for defense counsel's inspection. Defendant was a 20 year old male in good health with no mental or physical conditions. He resided with his mother, three brothers and a sister. Defendant was expelled from Byrd High School at age 17 as a disciplinary problem and attended vo-tech school while working on a GED. He admitted to some experience with marijuana, but denied any further involvement with drugs.
The trial judge stated for the record that he was aware of defendant's juvenile record but that it had not been considered in determining defendant's sentence. Defendant was a first felony offender. However, in 1986, he was charged with simple burglary and pled to reduced misdemeanor charges of trespass and criminal damage to property. He received a suspended jail sentence and supervised probation, which he successfully completed. In 1988, he was convicted of two counts of simple battery.
The court noted the circumstances underlying the defendant's conviction for attempted second degree murder. The bullet was still lodged in the victim's abdomen and only prompt medical treatment saved the victim's life. The court commented that because of defendant's damaged credibility and the other evidence the jury disbelieved his testimony.
The court found that there was a significant risk that defendant would commit more crimes and that he should be incarcerated. A lesser sentence would have deprecated the crime's serious nature. Defendant's conduct caused life-threatening harm to the victim and others on the bus. The trial court concluded that the crime was contemplated by defendant, there were no grounds to excuse or mitigate defendant's conduct, defendant had a prior criminal record, his actions were likely to continue because of his circumstances and character, and defendant's imprisonment would cause little hardship to his family.
Defendant's contentions to the contrary, the record reflects that the judge correctly complied with Art. 894.1 and thoughtfully articulated the criteria upon which he based his sentence. The record supports the sentence imposed. The crime was inexcusable and reprehensible. The sentence does not shock the conscience of this court. Thirty years at hard labor is not excessive in these circumstances.
Finding no merit to defendant's assignments of error and no errors patent on the face of the record, we affirm his conviction and sentence.[2]

APPLICATION FOR REHEARING
Before NORRIS, LINDSAY, HIGHTOWER, BROWN and STEWART, JJ.
Rehearing denied.
NOTES
[1] The record reflects that defense counsel did not formally move for a mistrial at this time. Instead, counsel objected to the use of a peremptory challenge by the prosecutor. This is a technical point, but one that gives us no further pause. See and compare LSA-C.Cr.P. Arts. 775 and 841.
[2] Assignments of Error No. 2 and 3 filed with the trial court, dealing with the court's denial of defendant's motion for new trial and post-judgment verdict of acquittal were not briefed or argued in brief by defendant. Accordingly, these assignments are considered abandoned. U.R.C.A. Rule 2-12.4. State v. Schwartz, 354 So.2d 1332 (La.1978).